UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BERNADENE WENDT, | |
| Plaintiff, | No. 21 C 01747 |
| v. | Judge Thomas M. Durkin |
| MENARD, INC., and PRESENTLY UNKNOWN EMPLOYEE(S), | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Bernadene Wendt sued Menard, Inc. ("Menard") for injuries she sustained when she allegedly slipped and fell on accumulated water in a retail store operated by Menard. Menard has moved for summary judgment, arguing it was neither responsible for nor on notice of the hazard. For the reasons set forth below, Menard's motion for summary judgment is denied.

**Background**

The following facts are undisputed except where otherwise indicated. Menard operates a retail hardware store located in Melrose Park, Illinois ("the Melrose Park Store"). R. 34 ¶ 1. The Melrose Park Store features restrooms available to customers adjacent to a set of wall-mounted drinking fountains, as shown in the image below (the two "X's" and checkmark are superimposed on the image for reference only):

1



R. 34 ¶ 4. The women's restroom is to the left of the drinking fountains. R. 34 ¶ 5. Store employees use these restrooms as well. R. 34 ¶ 67.

Wendt and her daughter Linda Wendt (referred to herein as "Linda" for clarity) visited the Melrose Park Store on June 24, 2018. R. 34 ¶ 2. Upon entering, both walked toward the store's restrooms. R. 34 ¶ 3. Wendt walked down the main aisle (the one running from the bottom of the photo), but there is some dispute over the

2

precise route she took to the women's room. R. 34 ¶¶ 6-8. Menard claims she walked directly from the aisle toward the women's room, while Wendt says she initially turned toward the men's room, then turned and walked past the water fountains to get to the women's room. *See* R. 34 ¶¶ 7-9 (citing conflicting testimony of Wendt, Linda, and store employee witness). Regardless, Linda testified that she was walking ahead of Wendt and passed the water fountains, where she caught a little water on her shoe. R. 34 ¶ 10. As she was about to open the door to the restroom, she turned and looked over her left shoulder and saw her mother fall in roughly the location of the checkmark in the above image. R. 34 ¶¶ 14-15.

Neither Wendt nor Linda saw the water Wendt slipped in until after she had fallen. R. 34 ¶¶ 16-17. Both women also testified that they did not know how long the water had been there or how it had gotten on the floor. R. 34 ¶¶ 18-22. However, Linda testified that she "assumed" it came from the water fountain because she had encountered water on the floor in that location during her prior visits to the Melrose Park Store. R. 34 ¶ 22; R. 37 ¶ 8. Linda testified that in her experience having used the water fountains on prior visits to the Melrose Park Store, they had high water pressure and would splash onto the floor (it is not immediately clear if Linda was referring to one specific fountain or multiple). R. 37 ¶¶ 9-12. Neither Wendt nor Linda had any knowledge of other incidents or people slipping or falling in water near the drinking fountains or restrooms of the Melrose Park Store, nor of any customer complaints about water puddling in that location. R. 34 ¶¶ 30-33. Linda did not test

3

the water fountain on the day of Wendt's fall, and when she returned on a later date, she found it had less pressure and splashed less. R. 37 ¶¶ 12, 14.

Menard's employee Robert Enright was assisting another customer in the store on the day in question when someone came up to him and told him that someone had slipped and fallen outside the women's restroom. R. 34 ¶ 42. Enright testified at his deposition that he saw a pool of water, less than 12 inches across, near where Wendt had fallen. R. 34 ¶ 45. A few weeks after the accident, on July 9, 2018, someone asked Enright to write a statement about Wendt's fall, which he turned in to his general manager. R 28-5, at 46:7-20. In his statement, Enright wrote, "There was some water on the floor near the water fountain, which looked like it had splashed onto the floor. There were drops of water close to the fountain and a small puddle about a foot away from the fountain." R. 34-3. However, in his deposition as part of this case, Enright's testimony was slightly different:

> Q: So what are you talking about when you're talking about water that had splashed onto the floor? You're talking about just the drops of water by the fountain, the small puddle, both?
> **A: Just droplets on the floor.**
> Q: The small puddle, do you know where that water came from?
> **A: No, I do not.**

R. 28-5, at 47:17-24.

Another employee who was in the store at the time, Jonathan Holt, also came to assist after Wendt fell. R. 34 ¶ 48. Holt said that he saw a puddle of water "underneath the water fountain" on the second tile away from the wall. R. 34 ¶ 49. Holt said he did not know how long the puddle had been there. R. 34 ¶ 53.

4

Scott Burvant was the assistant general manager of the Melrose Park Store at the time of Wendt's fall. R 34 ¶ 55. Burvant came to the restrooms after being notified that someone had fallen. R. 34 ¶ 59. He testified that he checked the water fountains after Wendt left and confirmed they were not leaking from underneath the water line. R. 34 ¶ 60. Burvant said he never learned where the puddle came from. R. 34 ¶ 61.

Burvant testified that the water fountains at the Melrose Park Store were less than one year old at the time of Wendt's fall, having been installed after a remodel that added the wall they were mounted on. R. 37 ¶ 9. Enright testified that he was not aware of any customers or employees slipping in water near the drinking fountains since the remodel, but said he occasionally saw water droplets splashed on the wall. R. 34 ¶ 47. Holt likewise was unaware of any prior slipping incidents near the water fountains, though he admitted he would not necessarily have been familiar with such incidents because of where he normally worked. R. 34 ¶ 54. Burvant testified that he had never observed water on the floor near the water fountains or restrooms, and that no other customers other than Wendt have ever complained about water accumulation near the fountains. R. 34 ¶ 63.

Burvant testified that Menards puts rugs in various places, such as near entrances, to make sure people will not slip in water. R. 37 ¶ 19. No such rugs were in place near the water fountains or bathrooms at the time Wendt fell. R. 37 ¶ 22.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317,

322-23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court considers the entire evidentiary record and must view all the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 2021 WL 4486445, at *1 (7th Cir. Oct. 1, 2021). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Analysis

I.  Consideration of Wendt's Proffered Expert Report

Before reaching the merits of Menard's motion, the Court must address the expert report Wendt submitted with her opposition brief. The report comes from Tim Wiese, who purports to be a retail safety expert. *See* R. 34-7. Menard asks the Court to ignore this report and any arguments derived from it because Wendt did not disclose Wiese's testimony prior to summary judgment as required by Rule 26(a)(2). *See Domkiene v. Menards, Inc.*, 2016 WL 4607888, at *3 (N.D. Ill. Sept. 6, 2016) (disregarding evidence and arguments that relied on expert opinions first disclosed in plaintiff's summary judgment opposition). Candidly, the Court finds consideration of Wiese's opinions wholly unnecessary to resolve this motion. Nonetheless, the Court

6

agrees that consideration of this late-disclosed expert is unfair and unjustified, particularly given the parties' prior agreement that no expert discovery would be necessary for dispositive liability motions. *See* R. 12, at 2. Accordingly, the Court will not consider any evidence or arguments to the extent they rely on Wiese's expert report or opinions in connection with this motion.

II.     Menard's Motion for Summary Judgment

"In Illinois, businesses owe their invitees a duty to maintain the premises in a reasonably safe condition to avoid injuring them." *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014). Under Illinois law, a plaintiff who is injured on a business premises by slipping on a foreign substance can establish liability of the business through proof (1) that the substance was placed there by the negligence of the business; or (2) that the business had either actual or constructive notice of the substance. *See id.*; *see also Lane v. Hardee's Food Sys., Inc.*, 184 F.3d 705, 707 (7th Cir. 1999) ("If the plaintiff is injured by slipping on a foreign substance placed or left on the premises by the proprietor or its agent, the defendant business can be liable whether it knows of the dangerous condition or not."). Menard argues that Wendt's claim fails because she has offered insufficient evidence that the puddle accumulated due to Menard's own negligent act or omission, or that Menard had any actual or constructive knowledge of its presence.

To the first point, Menard contends that Wendt has identified no evidence in the record to show that it was responsible for the accumulated puddle of water. To prove Menard's own negligence created the hazard in this case, Wendt must

7

> (1) show that the foreign substance was related to the defendant's business and (2) "offer some further evidence, direct or circumstantial, however slight, such as the location of the substance or the business practices of the defendant, from which it could be inferred that it was more likely that defendant or his servants, rather than a customer, dropped the substance on the premises."

*Zuppardi*, 770 F.3d at 649-50 (quoting *Donoho v. O'Connell's, Inc.*, 148 N.E.2d 434, 439 (Ill. 1958)).

Other courts in this district have held that the "physical condition" of a defendant's store is related to the defendant's business for purposes of this test. *See, e.g.*, *Fetzer v. Wal-Mart Stores, Inc.*, 2016 WL 792296, at *16 (N.D. Ill. Mar. 1, 2016) (allegedly leaky roof was related to defendant's business); *Coffee v. Menard, Inc.*, 2015 WL 1399049, at *4 (N.D. Ill. Mar. 25, 2015) (merchandise display was related to defendant's business). Like the roof in *Fetzer*, the drinking fountains at the Melrose Park Store qualify as such—they are fixtures on Menard's property and Menard is responsible for maintaining them. Furthermore, the record reflects that both customers and employees use them and the nearby restrooms.

The more hotly disputed question is whether Wendt has offered sufficient evidence to show that the water in fact came from those drinking fountains, rather than the actions of a customer or other mystery source. Essentially every witness to the incident testified that they had no knowledge of how exactly the water got on the floor. Menard relies on this fact to analogize the case to *Zuppardi*. In *Zuppardi*, the plaintiff slipped and fell in a puddle in an aisle of a Wal-Mart grocery section. 770 F.3d at 650. The court affirmed summary judgment in favor of Wal-Mart, concluding that the plaintiff had not presented evidence that "the substance was more likely

8

placed on the premises through [Wal-Mart's] negligence rather than a customer's."
*Id.* at 649. The court noted several gaps in the plaintiff's theory:

> There were no trails, tracks, or footprints leading to or from the puddle to any store display or freezer. Zuppardi stated she did not see any Wal–Mart employees as she traveled down the aisle prior to the fall. There was no evidence that a water bottle was found near the location of the spill. She did not notice any carts with paper towels or cleaning liquids near the puddle. While she testified that a Wal–Mart employee may have been restocking water at the time of the fall, water bottles were located six aisles away from the location where the puddle accumulated.

*Id.* at 650.

*Zuppardi* is comparable to this case in the sense that the witnesses here also lack direct knowledge of where the puddle came from. But Wendt's claim does not fail simply because she did not see the water physically fall to the ground. Indeed, the Illinois Supreme Court in *Donoho* noted that evidence showing the defendant's responsibility may be direct or circumstantial, "however slight," and offered the location of the foreign substance as a fact for consideration. 148 N.E.2d at 439. If Wendt had spotted a mop bucket overturned near the location of the water puddle, one would hardly call it speculative or unreasonable for her to identify it as the likely source of the water, even if nobody saw it spill. It is not a far cry to apply the same inference to a puddle found within a foot or two of a water fountain, which by its very design and function sprays water into the air, even if nobody saw it splash on the ground. This critical piece of context differentiates this case from *Zuppardi*, where the location of the water offered no clue as to its origin.

A closer analogue to this case is *Cheney v. Menard, Inc.*, 2016 WL 447419 (C.D. Ill. Feb. 4, 2016). In *Cheney*, the plaintiff alleged she was injured when she slipped

9

and fell in a puddle of water near a soda machine in the defendant's store. *Id.* at *2. The plaintiff offered as evidence her own testimony regarding the location of the water and a statement by a store employee that the cooler had previously leaked water. *Id.* at *5. The court concluded that this evidence was sufficient to submit to the jury the issue of whether Menard was responsible for the unsafe condition. *Id.*

Here, like in *Cheney*, a reasonable jury could infer without improper speculation that the water fountain (and by extension, Menard) was the source of the puddle. This inference is supported by Linda's testimony that she previously encountered water spilled on the floor near the water fountains in the Melrose Park Store, as well as the written statement from Enright suggesting the water splashed out of the fountains. Of course, Menard has countered that evidence with testimony disputing Enright's statement and suggesting the water fountains in place when Wendt slipped were new and had no history of splashing water on the floor. Resolving this disagreement is the province of the jury. *See Fetzer*, 2016 WL 792296, at *13 ("At the summary judgment stage, however, it is well established that the court cannot chose among competing versions of the facts.").

Menard's argument that a customer could have spilled the water is similarly unavailing. For one, Menard has pointed to no evidence in the record to support this possibility, rendering it at least as "speculative" as Wendt's suggestion that water splashed out of the drinking fountain. Furthermore, "[a]s the Illinois Supreme Court explained in *Donoho*, the relevant question is not whether a customer *could have* caused the dangerous condition to arise," but rather "whether the evidence makes it

more probable that the defendant or his servants" are responsible. *Coffee*, 2015 WL 1399049, at *4 (citing *Donoho*, 148 N.E.2d at 441). Perhaps a jury would conclude that a customer, and not Menard, was more likely responsible for the water on the floor.[1] But the evidence does not compel such a finding at this stage when extending all reasonable inferences in Wendt's favor.

For the purposes of resolving this motion, it is enough to conclude that a reasonable jury could find that the slip hazard in this case arose due to Menard's own negligence. The Court therefore does not consider at this time whether Wendt has offered sufficient evidence to prove Menard had actual or constructive knowledge of the hazard. *See Donoho*, 148 N.E.2d at 437.

## Conclusion

For the foregoing reasons, Menard's motion for summary judgment [R. 26] is denied.

ENTERED:

*Thomas M. Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: September 23, 2022

---

[1] Though not necessary to decide this motion in Wendt's favor, the Court also questions whether the involvement of a customer would necessarily cut off Menard's liability, given the foreseeable possibility that someone using a water fountain on a tile floor might inadvertently spill water and thereby create a hazard.